## ESTELLE WILSON WILLIS v. E. REED.

Western Section.   March 28, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

William H. Foote (col.), of Memphis, for appellant.
W. H. Bentley (col.), of Memphis, for appellee.

OWEN, J.   Estelle Wilson Willis has appealed from a judgment rendered against her in the circuit court of Shelby county for $450 and interest.   The cause was tried before Special Judge Pat J. Lyons, without the intervention of a jury.

The suit originated before a Justice of the Peace against three defendants, A. G. Reams and Morgan D. Wilson, trading as Wilson & Reams and Estelle Wilson Willis, trading as Wilson & Reams, successor to A. G. Reams and M. D. Wilson, and said suit was on a

note for $450 bearing date of November 26, 1925, and due twelve months after date, with six per cent interest from date, which note was payable to E. Reed and signed "Wilson & Reams by A. G. Reams and Morgan D. Wilson." The note was endorsed on the back "A. G. Reams and Morgan D. Wilson."

Estelle Wilson Willis filed a sworn plea, denying that she executed the note sued on and denying that she authorized any one to execute it so as to bind her in the premises, and that said note was not her act or deed. The justice dismissed the suit as to Estelle Wilson Willis and gave judgment against the other two defendants, from which they did not appeal.

The plaintiff appealed to the circuit court and there the result was as has heretofore been stated. Defendant seasonably filed her motion for a new trial and has prayed and perfected an appeal and has assigned five errors.

The first error is, there is no evidence to support the verdict.

The second and third assignments complain of the court considering certain circumstances or facts as evidence which he referred to in an opinion, which matters came to his attention after the cause had been submitted, or the proof had been introduced and the court had the case under advisement.

The fourth assignment complains of the court holding the defendant liable on the note because he found by an entry in her bank book which she had introduced as an exhibit to her testimony, by which entry the defendant was credited with $500 the day after said note was executed.

The fifth assignment is but a restatement of the second and third assignments.

There were but two witnesses before the court—the plaintiff and the defendant.

The undisputed facts show that the defendant was engaged in the undertaking business in Memphis, Tennessee, at the time of the execution of this note. Morgan Wilson was the son of the defendant and Reams was an embalmer in the employ of the defendant. Defendant discharged both of these parties about the first of June, 1927. The suit was instituted before the Justice of the Peace the 29th of July, 1927. The plaintiff is a colored man, a truck driver. He had the undertaking firm of Wilson and Reams to bury his (plaintiff's) brother. He turned over to them an insurance policy on his brother's life, out of which the undertaking firm was to pay the funeral expenses. After this funeral bill was paid it appears there was due the plaintiff the sum of $50. The plaintiff did not know the defendant; had no personal dealings with her, but instead of paying $50 to the plaintiff, Morgan D. Wilson and A. G. Reams persuaded the plaintiff to lend them an additional sum of $400, stating to him

that they owed money on their rolling stock; that he made the loan and that all of his dealings relative to the note were with Morgan D. Wilson and A. G. Reams; that he did not know Estelle Wilson Willis was connected with the firm of Wilson & Reams. The defendant testfied that she was the owner of the business of Wilson & Reams; that the business was conducted under the trade name of Wilson & Reams; that the stationery that the firm used showed that the same consisted of Morgan D. Wilson and A. G. Reams; that her son Morgan D. Wilson was the manager of the business. She testified that her son had authority to endorse and cash all burial checks given in payment of burials but that she paid all bills and wrote and signed all the checks in the name of Estelle M. Wilson; that neither her son nor A. G. Reams had any authority to bind the firm by signing a note or notes. She testified she paid both Morgan D. Wilson and A. G. Reams a salary; that she did not know the plaintiff A. G. Reams and did not know of the execution of the note until after she had discharged both her son and Reams. She discharged her two employees because they mismanaged the business, ran it in debt and squandered its assets. She testified that no part of the money borrowed on the note found its way into the business or that the business profited in any way by the loan. She produced two bank books upon the Liberty Bank of Memphis, Tennessee, and offered them as Exhibits "A" and "B" to her testimony. This was all the evidence.

One of the bank books shows her account from June 24, 1922, to March 16, 1926; the other shows the account from March 19, 1926, to August 10, 1928. Just preceding the execution of the note we find, during September, 1925, the first bank book shows that defendant had to her credit, September 9, 1925, $53.22. She made three deposits between September 9th and October 2nd. On September 19th, $55; September 22d, $25; September 24th, $20. Her deposits in October were as follows: October 2nd, $41; October 15th, $99.80; The deposits in November were: November 5th, $50; November 23d, $15; November 27th, $500. This was the day following that upon which plaintiff's loan of $400 was made. The deposits in December were: December 15th $195; December 8th, $65. On January 18, 1926, she deposited $625; February 2, 1926, $43; March 2nd, $80; February 18th $50, which appears to have been entered after the deposit of March 2nd.

The Circuit Judge was of the opinion from this deposit of $500 of November 27th, the day following the loan of $400 by the plaintiff, and which deposit went to the credit of the defendant, that she received the benefit of the $400 loan and profited thereby.

The defendant does not undertake to explain why she deposited $500, or to account for the increase of her deposit over the usual

amounts. The court had announced in his opinion his finding as to this $500 deposit. The defendant had an opportunity to explain upon her motion for a new trial, if she had any explanation to make. Defendant's son and Reams were not examined and there whereabouts were not accounted for, further than the fact they had been discharged shortly before this suit was instituted.

We are of opinion that there is some evidence to sustain the judgment in favor of the plaintiff and the first assignment is overruled.

On the assignments in regard to the court considering extrinsic evidence or evidence that was not produced at the trial, this was an unfortunate statement by the trial judge in referring to these two incidents, but he stated that he did not give any weight to the same and that he was not influenced by these two incidents in rendering his judgment against the defendant. As to one of the statements that the telephone directory showed that the firm of Wilson & Reams consisted of Morgan D. Wilson and A. G. Reams, there is no dispute. The defendant testified that the stationery showed that the firm was composed of Morgan D. Wilson and A. G. Reams. The other incident in regard to the court recalling that the defendant receipted for a funeral bill or receipted for some money which was used in paying for a funeral, we do not think defendant was prejudiced by this statement, especially when the court said he was deciding it on the fact that the bank book showed that the defendant had deposited the $500 the day following the execution of the note and the lending of the $400 by the plaintiff to the undertaking firm. These assignments are overruled.

Counsel for the defendant insists that even if two parties who executed the note were partners and held themselves out as such, they could not bind her, and relies on the following authorities:

"Where a negotiable instrument is made by a partner contrary to the provisions of the agreement between him and his copartners, or is negotiated by a partner in the firm name for a fraudulent purpose or for his own benefit, or the payment of the individual debts of the partner issuing it, the general rule is that such instrument is not binding on the partnership without the knowledge, consents, approval or ratification of his partner. If one partners delivers a promissory note or bill of exchange of the partnership in payment of his private debt, the very form of the note or bill usually gives the creditor notice that it is a security of the partnership, and throws on him the burden of showing that the other partners authorized or assented to what, without proof of such authority or assent, appears to be a misappropriation of the partnership funds. 20 R. C. L., pages 902-903, paragraph 113."

In Crosthwait v. Ross, 1 Humphrey, 23, Justice Turley in commenting on a transaction of a similar nature when one partner executed a promissory note for borrowed money said:

"But money is not an article for which such a firm, has use directly, though it may indirectly; but, if it has, it must be raised by the individuals comprising the firm, and note by one member thereof, unless he be authorized by the others so to do independent of any right arising from the partnership."

Counsel for plaintiff relies on the case of M. Gavin v. W. W. Walker, 14 Lea, 648, which announces the following rule:

"1. PARTNERSHIP. Power of partner to bind firm. Whether persons are partners in trade, or in occupation or employment, one partner may bind his co-partner in any matter which, according to the usual course of dealing in the particular kind of partnership, has reference to the business transacted by the firm.

"2. Same. If money be borrowed by one partner on the credit of the firm, in the course of business of the firm, it will make no difference in the liability of other partners that it has been misapplied by the borrowing partner.

"3. Same. Dormant Partner. If two persons are partners in a business conducted by one of them without any firm name, and a fortiori, if the other member be a dormant partner, and the active partner give a note in his own name for money borrowed to carry on the business and on the fact of the business, the note will bind both partners."

The plaintiff testified that when the parties executed the note they stated they were going to use the funds in paying on the rolling stock of the undertaking business. This evidence was not excepted to and we are of opinion there is evidence tending to show that the loan advanced by the plaintiff went into the business of the firm, of which firm the defendant was the sole owner, according to her testimony, and that she deposited the proceeds of this loan to her credit in the bank the day following the making of the loan. She couldn't deposit the money the day before the loan was made, and in the usual business transactions the proceeds of a loan will be deposited the day received by the borrower or the day following, and more likely the day following the making of the loans, because in cities the banks close at two or three o'clock p. m.

It results that we find no reversible error in the judgment of the lower court and it is affirmed.

Plaintiff will recover of the defendant and the surety on her appeal bond the amount of the judgment, with interest thereon from the date of its rendition, and all the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.